1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHAWN JONES,

          Petitioner,

  v.

KELLY SANTORO, Warden,

          Respondent.

Case No.  2:19-cv-10868-ODW-KES

FINAL REPORT AND
RECOMMENDATION OF U.S.
MAGISTRATE JUDGE

This Final Report and Recommendation ("R&R") is submitted to the Honorable Otis D. Wright, II, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Courts for the Central District of California.  This Final R&R addresses Petitioner's objections (Dkt. 13) to the initial R&R (Dkt. 10).

**I.**

**BACKGROUND**

On December 17, 2019 (per proof of service), Shawn Jones ("Petitioner") constructively filed a typed Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 (the "Petition").  (Dkt. 1.)

The following facts are taken from the Petition, from the Court's own

records, or from public records; where necessary, the Court takes judicial notice of the latter.  <u>See</u> Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); <u>United States v. Wilson</u>, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases.").

Petitioner was convicted in 2014 of armed robbery and related crimes.  (Dkt. 1 at 2.[1])  The California Court of Appeal affirmed his conviction.  <u>People v. Jones</u>, No. B258757, 2016 WL 816486, 2016 Cal. App. Unpub. LEXIS 1493 (Mar. 2, 2016).  He next filed a petition for review by the California Supreme Court which was denied on May 11, 2016.  <u>See</u> <u>People v. Jones</u>, No. S233664, 2016 Cal. LEXIS 3396 (May 11, 2016).  He did not file a petition for certiorari in the U.S. Supreme Court.  (Dkt. 1 at 5.)

Petitioner filed a state habeas petition with the Los Angeles County Superior Court ("LASC Petition") on August 17, 2017.  (<u>Id.</u> at 3.)  The LASC Petition was denied in October 2017.  (<u>Id.</u> at 4.)  Petitioner then filed a second state habeas petition with the California Court of Appeal ("COA Petition") on January 16, 2018 which was denied on January 25, 2018.  <u>In re Shawn Jones</u>, Case No. B287510 (Cal. Ct. App. Jan. 25, 2018).  The California Court of Appeal denied the petition "on the grounds the petition is untimely without sufficient justification and raises issues that should have been raised on appeal.  (<u>In re Clark</u> (1993) 5 Cal.4th 750, 765-766.)  In addition, on the merits, petitioner has not stated facts or provided evidence sufficient to demonstrate a prima facie case for relief."  <u>Id.</u>  Petitioner filed his third state habeas petition with the California Supreme Court on June 25, 2018, and it was denied on January 23, 2019.  <u>In re Shawn Jones</u>, Case No.

---

[1] The Court refers to the pagination imposed by the Court's electronic filing system.

1    S249665, 2019 Cal. LEXIS 407 (Jan. 23, 2019).

2          He has no additional state habeas petitions pending.  (Dkt. 1 at 10.)

3          On January 6, 2020, the Court ordered Petitioner to show cause why his

4    federal Petition should not be dismissed as untimely.  (Dkt. 4.)  Petitioner argued

5    that he is due equitable tolling from June 13, 2007[2] to November 20, 2019, "due to

6    a hand fracture that required extensive surgery and subsequently required a cast."

7    (Dkt. 5 at 2.)  Petitioner states that the "surgery prevented [him] from writing from

8    June 13, 2007 to November 20, 2019," and that he is still in "physical therapy

9    concerning his right hand."  (Id.)  Medical records indicate that on June 13, 2017,

10   Petitioner suffered "Fracture of first metacarpal; Right hand pain; Thumb fracture."

11   (Id. at 4.)  Petitioner also suffers from asthma, dyslipidemia, edema, obesity,

12   anemia, hypertension, and seizures.  (Id. at 7, 10.)  None of these records mention

13   surgery or a cast.  Petitioner submitted a pass for a physical therapy appointment on

14   January 21, 2020.  (Id. at 12.)

15         On December 17, 2019, Petitioner was employed as a porter at Delano State

16   Prison making 8¢/hour.  (Dkt. 1 at 11.)  Petitioner neither filed a prison trust

17   account statement showing how long he was so employed nor paid the $5 filing fee.

18   On February 19, 2020, the Court ordered Petitioner to file his prison trust account

19   statement.  (Dkt. 6.)  On March 11, 2020, Petitioner filed an application to proceed

20   in forma pauperis ("IFP") along with a prison trust account statement.  (Dkt. 7.)

21   Per this second declaration, Petitioner is not presently employed.  (Id. at 1.)  The

22   statement shows deposits labelled "I/M Pay – Support" in November and December

23   2019, and similar payments in January and February 2020.  (Id. at 5.)  The Court

24   assumes that these payments reflect income from working as a porter, because none

25   of the other line items reflect income.

26

27

28   _____

[2] Petitioner wrote 2007 but apparently meant 2017.

3

## II.

## DISCUSSION

**A.**   **Legal Standard.**

The Ninth Circuit has held that the district court has the authority to raise the statute of limitations issue <u>sua sponte</u> when untimeliness is obvious on the face of the Petition and to summarily dismiss a habeas petition on that ground pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, so long as the Court "provides the petitioner with adequate notice and an opportunity to respond."  <u>Herbst v. Cook</u>, 260 F.3d 1039, 1042-43 (9th Cir. 2001); <u>see also</u> <u>Nardi v. Stewart</u>, 354 F.3d 1134, 1141 (9th Cir. 2004).

**1.**   **One-Year Statute of Limitations.**

This action is subject to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

AEDPA provides as follows:

**(d)** **(1)** A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

**(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

**(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

**(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

**(D)** the date on which the factual predicate of the claim or claims

4

1    presented could have been discovered through the exercise of due

2    diligence.

3    (**2**) The time during which a properly filed application for State post-

4    conviction or other collateral review with respect to the pertinent

5    judgment or claim is pending shall not be counted toward any period

6    of limitation under this subsection.

7    28 U.S.C. § 2244(d).

8         Thus, AEDPA "establishes a 1-year time limitation for a state prisoner to file

9    a federal habeas corpus petition." Jimenez v. Quarterman, 555 U.S. 113, 114

10    (2009).  The statute of limitations period generally runs from "the date on which the

11    judgment became final by the conclusion of direct review or the expiration of the

12    time for seeking such review[.]" 28 U.S.C. § 2244(d)(1)(A).  "[F]or a state prisoner

13    who does not seek review in a State's highest court, the judgment becomes 'final'

14    [for purposes of § 2244(d)(1)(a)] on the date that the time for seeking such review

15    expires." Gonzalez v. Thaler, 565 U.S. 134, 137 (2012).  In contrast, where a state

16    defendant seeks direct review in a state's highest court, the judgment becomes final

17    when time for seeking certiorari review in the U.S. Supreme Court expires.  See

18    Jimenez, 555 U.S. at 120.  This is because the U.S. Supreme Court has jurisdiction

19    over final decisions of the highest state court "in which a decision could be had"

20    respecting a constitutional right or other federal law.  28 U.S.C. § 1257(a).  To

21    appeal to the U.S. Supreme Court, a petition for writ of certiorari must be filed

22    within 90 days after entry of the state court judgment.  U.S. Sup. Ct. R. 13.

23       **2.**     **Statutory Tolling.**

24         AEDPA provides for statutory tolling, as follows:

25    The time during which a properly filed application for State post-

26    conviction or other collateral review with respect to the pertinent

27    judgment or claim is pending shall not be counted toward any period

28    of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The U.S. Supreme Court has interpreted this language to mean that AEDPA's statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects a petitioner's final collateral challenge, so long as the petitioner has not unreasonably delayed during the gaps between sequential filings. Carey v. Saffold, 536 U.S. 214, 219-21 (2002) (holding that, for purposes of statutory tolling, a California petitioner's application for collateral review remains pending during the intervals between the time a lower state court denies the application and the time the petitioner files a further petition in a higher state court); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999), cert. denied, 529 U.S. 1104 (2000) (The statute is tolled from "the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge."). Statutory tolling "does not permit the reinitiation of the limitations period that has ended before the state petition was filed[,]" even if the state petition was timely filed. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.), cert. denied, 540 U.S. 924 (2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001); Wixom v. Washington, 264 F.3d 894, 898-99 (9th Cir. 2001), cert. denied, 534 U.S. 1143 (2002).

AEDPA's one-year limitation period is subject to statutory tolling during the pendency of a properly filed state application for post-conviction relief. 28 U.S.C. § 2244(d)(2). A state postconviction petition, however, is not "not 'properly filed' if it was rejected by the state court as untimely." Allen v. Siebert, 552 U.S. 3, 6 (2007). If a state court denies a petition as untimely and on alternative grounds, the alternative rulings do not make a petition timely and therefore "properly filed." Bonner v. Carey, 425 F.3d 1145, 1149 n.19 (9th Cir. 2005).

If a California court denies a petition by citing In re Clark, 5 Cal. 4th 750, 765 (1993), then the denial is based on untimeliness. Walker v. Martin, 562 U.S. 307, 310 (2011) (discussing meaning of pinpoint citation to page 765 of Clark). "When a postconviction petition is untimely under state law, that is the end of the

1  matter for purposes of § 2244(d)(2)."  Pace v. DiGuglielmo, 544 U.S. 408, 414

2  (2005) (citation, internal quotations, and alteration in original omitted).  "Under

3  Pace, if a state court denies a petition as untimely, none of the time before or during

4  the court's consideration of that petition is statutorily tolled."  Bonner, 425 F.3d at

5  1149.

6       **3.     Equitable Tolling.**

7       In Holland v. Florida, 560 U.S. 631, 649 (2010), the Supreme Court held that

8  AEDPA's one-year limitation period is also subject to equitable tolling in

9  appropriate cases.  However, in order to be entitled to equitable tolling, the

10 petitioner must show both that (1) he has been pursuing his rights diligently, and

11 (2) some extraordinary circumstance stood in his way and prevented his timely

12 filing.  See Id. (quoting Pace, 544 U.S. at 418).  The Ninth Circuit has held that the

13 Pace standard is consistent with the Ninth Circuit's "sparing application of the

14 doctrine of equitable tolling."  Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011

15 (9th Cir.), cert. denied, 558 U.S. 897 (2009).  Thus, "[t]he petitioner must show that

16 'the extraordinary circumstances were the cause of his untimeliness and that the

17 extraordinary circumstances made it impossible to file a petition on time.'"  Porter

18 v. Ollison, 620 F.3d 952, 959 (2010) (quoting Ramirez v. Yates, 571 F.3d 993, 997

19 (9th Cir. 2009)).  "[T]he threshold necessary to trigger equitable tolling [under

20 AEDPA] is very high, lest the exceptions swallow the rule."  Miranda v. Castro,

21 292 F.3d 1063, 1066 (9th Cir.) (second alteration in original), cert. denied, 537 U.S.

22 1003 (2002).  Consequently, as the Ninth Circuit has recognized, equitable tolling

23 will be justified in few cases.  Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

24 "To apply the doctrine in 'extraordinary circumstances' necessarily suggests the

25 doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his

26 way' suggests that an external force must cause the untimeliness, rather than, as we

27 have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part,

28 all of which would preclude the application of equitable tolling.'"  Waldron-

1  Ramsey, 556 F.3d at 1011 (alteration in original) (quoting Harris v. Carter, 515

2  F.3d 1051, 1055 (9th Cir. 2008)).

3       "To determine if a petitioner has been diligent in pursuing his petition, courts

4  consider the petitioner's overall level of care and caution in light of his or her

5  particular circumstances." Fue v. Biter, 842 F.3d 650, 654 (9th Cir. 2016) (citation

6  omitted). A petitioner "capable of preparing and filing state court petitions" during

7  the time for which they seek equitable tolling, demonstrates that the petitioner "was

8  capable of preparing and filing a [federal] petition during [that same time period]."

9  Roberts v. Marshall, 627 F.3d 768, 773 (9th Cir. 2010) (quoting Gaston v. Palmer,

10  417 F.3d 1030, 1035 (9th Cir. 2005) (first alteration in original)).

11       The burden of demonstrating that AEDPA's one-year limitation period was

12  sufficiently tolled, whether statutorily or equitably, rests with the petitioner. See,

13  e.g., Pace, 544 U.S. at 418; Banjo v. Ayers, 614 F.3d 964, 967 (9th Cir. 2010);

14  Gaston, 417 F.3d at 1034 (as amended); Miranda, 292 F.3d at 1065.

15  **B.      The Petition Is Untimely.**

16       Petitioner's 2014 conviction became final 90 days after the California

17  Supreme Court denied review, i.e., on August 9, 2016. Absent tolling, his AEDPA

18  filing deadline expired one year later on August 9, 2017. Petitioner did not file any

19  state habeas petitions before August 9, 2017 that could potentially create statutory

20  tolling. Petitioner argues that his hand injury, surgery, and recovery incapacitated

21  him from June 2017 through November 2019, and prevented him from filing the

22  instant Petition on time. (Dkt. 5 at 2.) However, Petitioner was able to file a state

23  habeas petition with the Los Angeles County Superior Court on August 17, 2017,

24  just two months after his hand injury. (Dkt. 1 at 3-4.) Thus, Petitioner's hand

25  injury did not prevent him from preparing court filings as of August 17, 2017.

26  Petitioner also filed state habeas petitions in January and June of 2018, and it

27  appears that he was working as a porter before November 20, 2019. (Dkt. 1 at 11;

28  Dkt. 5 at 2; Dkt. 7 at 5.)

Even if the Court (1) awarded Petitioner some equitable tolling, stopping his AEDPA clock on the date of his hand injury (i.e., June 13, 2017) with 58 days left, (2) re-started the clock on August 17, 2017 (i.e., the filing date of his LASC petition), (3) awarded Petitioner statutory tolling while the LASC petition was pending (i.e., from August 17, 2017 until October 31, 2017), and (4) added 58 days to October 31, then Petitioner's new AEDPA filing deadline would have been December 28, 2017.[3]

Petitioner cannot receive statutory tolling for his COA petition, because the California Court of Appeal denied it as untimely with a cite to In re Clark, 5 Cal. 4th 750, 675-66 (1993). Due to the untimeliness finding, Petitioner also does not receive gap tolling between October 31, 2017, when the Los Angeles County Superior Court denied his first state petition, and January 16, 2018, when Petitioner filed his COA petition. Petitioner also cannot receive statutory tolling for any subsequent state court petitions, because they were filed after his AEDPA deadline expired.

Petitioner has the burden of showing he is entitled to sufficient equitable tolling. The 10 pages of medical records he provided with his Petition and in response to the OSC (Dkt. 1, 5) do not substantiate his asserted inability to file a timely federal Petition despite reasonable diligence, especially in light of (1) his state court filings during 2017 and 2018, (2) the fact that a person can type (albeit slowly) using only one hand, and (3) Petitioner's employment as a porter before November 2019 (which appears inconsistent with his alleged inability to use his right hand until November 20, 2019).

Petitioner submitted additional evidence with his objections to the initial

---

[3] Equitable tolling is not subject to a stop-clock approach. See Smith v. Davis, 953 F.3d 582, 598-99 (9th Cir. 2020) (en banc). The Court uses the stop-clock approach in this "even if" analysis only to demonstrate that even using that approach (which is more favorable to Petitioner than an examination of his diligence during the entire AEDPA limitations period), his claims are untimely.

9

1    R&R. (Dkt. 13.) That evidence includes more medical records and a declaration

2    from inmate Travis Berry. (Id.) Mr. Berry declares that on December 10, 2019,

3    Petitioner asked for help writing and typing his federal petition. (Id. at 9.) Mr.

4    Berry sat with Petitioner, wrote down his arguments, and then typed the Petition on

5    December 15. (Id.) Petitioner signed it on December 17. (Dkt. 1 at 10.) Mr.

6    Berry's declaration does not support Petitioner's arguments for equitable tolling.

7    The declaration demonstrates that despite his hand injury, Petitioner could prepare

8    legal filings with the assistance of other inmates in as few as 7 days, and that he

9    failed to request Mr. Berry's assistance until December 2019, long after his

10   AEDPA deadline had expired.

11          Per the new medical records, June 13, 2017 x-rays revealed that Petitioner

12   had fractured his first metacarpal incident to "a serious accident" at his prison.

13   (Dkt. 1 at 15; Dkt. 13 at 20.) His right hand was placed in a splint, and he was

14   referred to an orthopedist. (Id.) At the orthopedic evaluation on June 26, 2017, he

15   was placed in a thumb cast and scheduled for a follow-up appointment in three

16   weeks. (Id. at 12.) Petitioner returned to the orthopedist on July 17, 2017, at which

17   time the doctor removed his cast, examined his hand, and found it "unremarkable"

18   for tenderness or swelling. (Id. at 13.) The doctor gave Petitioner a thumb brace.

19   (Id.)

20          On July 26, 2018, Petitioner was evaluated as a candidate for orthopedic

21   surgery due to a new hand injury. (Id. at 14-15.) This time, the fracture was to

22   Plaintiff's third metacarpal and the surgeon noted it was "following injury at

23   basketball." (Id.) The surgeon observed that Petitioner's right hand was

24   "moderately swollen," and he requested authorization for "internal fixation." (Id. at

25   15.) Petitioner did not provide any records documenting that surgery was

26   authorized and performed.

27          Petitioner continued to complain of right hand pain in 2018 and 2019,

28   although these records contain no evidence of any treatment. (Id. at 25-35.)

Petitioner underlines "right hand pain" and "orthotic/splint" on one record (id. at 26) as if to indicate that these items are related, but another record shows that the "orthotic/splint" was for Petitioner's feet (id. at 35).

In July 2018, x-rays of Petitioner's right hand revealed "a fracture of the base of the third metacarpal[.]" (Id. at 15.)  In November 2018, Petitioner underwent additional x-rays of his right hand that showed "posttraumatic changes including first metacarpal deformity" and "fracture deformity at the fifth metacarpal base[.]" (Id. at 39.)  Another set of x-rays taken on December 20, 2019, showed "no acute osseous abnormality." (Id. at 38.)  In January and February 2020, Petitioner received physical therapy to address "chronic right shoulder pain." (Id. at 37.)

Thus, while these new medical records provide additional details about Petitioner's hand injuries and his continuing complaints of hand pain, they do not demonstrate that his hand injuries prevented him from filing a timely federal habeas petition in 2017.  Petitioner constructively filed the instant Petition on December 17, 2019, and his AEDPA deadline expired in August 2017 – or, even granting him about 2 months of equitable tolling for his initial hand injury, in December 2017 at the latest.  Accordingly, the Petition is untimely.

## III.

## CONCLUSION

For all these reasons, the Petition should be dismissed as untimely.

DATED:  May 27, 2020                   _____

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE